IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EASTMAN INDUSTRIES d/b/a
INGERSOLL TRACTOR CO.,

                                                  OPINION AND ORDER

              Plaintiff,

                                                  07–cv-275-bbc

    v.

NORLEN INCORPORATED d/b/a
NORLEN MANUFACTURING, INC.,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this civil action for monetary relief, plaintiff Eastman Industries, d/b/a Ingersoll Tractor Co., contends that defendant Norlen Incorporated, d/b/a Norlen Manufacturing, Inc., committed the tort of conversion. It asserts that defendant wrongfully exercised dominion and control over plaintiff's property by disposing of tooling owned by plaintiff without its permission. Defendant concedes that it converted plaintiff's tooling, but disagrees with plaintiff about the amount of damages for which it should be liable as a result of its conversion. Jurisdiction is present. 28 U.S.C. § 1332(a).

      Presently before the court is plaintiff's motion for summary judgment. The parties dispute the actual value of damages plaintiff is entitled to recover. As noted above,

1

defendant concedes liability and plaintiff's motion will be granted on that ground. However, plaintiff has failed to show that it is entitled to judgment as a matter of law with respect to the amount of damages for which defendant is liable because genuine issues of material fact remain regarding the value of the converted tooling.

From the parties' proposed finding of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

Plaintiff Eastman Industries, d/b/a Ingersoll Tractor Co., is incorporated in Maine with its principal place of business in Portland, Maine. Defendant Norlen Incorporated, d/b/a Norlen Manufacturing, Inc., is incorporated in Wisconsin with its principal place of business in Schofield, Wisconsin. Plaintiff initiated this legal action for conversion in May 2007, seeking damages from defendant in excess of $400,000.00.

### B. Ingersoll Tractor Company and Its Tooling

Ingersoll Tractor Company was in the business of assembling and selling garden tractors and attachments. Ingersoll hired outside manufacturers to fabricate certain tractor parts. To fabricate tractor parts, outside manufacturers had to use tooling or dies, which are

metal molds created from engineering drawings and specifications of a part, such as a tractor part. They are used to cut and form flat sheets of steel into the shape of the particular part.

The unique tooling Ingersoll had made for its tractor parts was compound or hand-fed tooling, as opposed to progressive tooling, which allows the production of a part in one step by having different operations done in one tool. Generally, compound tooling requires using several tools or dies together at different steps to produce a part and imposes greater labor costs than progressive tooling. The life expectancy of a tool depends on factors such as the steel used, the volume of parts produced and the design of the tool, not on whether the tool is progressive or compound.

Although progressive tooling was available in the early to mid 1980's when Ingersoll had its tooling made, advancements in technology have made progressive tooling more common today. Metalcraft of Mayville, Inc. and Rowley Tool Corporation were the companies that originally used Ingersoll's compound tooling to create tractor parts for Ingersoll. In 2003, Ingersoll had its compound tooling transferred from Metalcraft to defendant Norlen, at which time defendant began manufacturing tractor parts for Ingersoll using Ingersoll's compound tooling. Defendant was specifically given possession of Ingersoll's dies numbered 2640, 2641, 2642, 2643, 2644, 2645, 2646, 2648, 2649, 2650, 2659, 2665, 2669, 2670, 2671, 2685, 2686, 2687, 2688, 2792 and 2793.

3

C. Eastman's Purchase of Ingersoll and Norlen's Scrapping of Eastman's Tooling

When Ingersoll filed for receivership between December 2004 and January 2005, defendant no longer produced parts for Ingersoll. On January 7, 2005, Ingersoll filed a voluntary assignment for the benefit of creditors under Chapter 128 of the Wisconsin Statutes. On April, 15, 2005, plaintiff Eastman purchased Ingersoll's assets out of receivership. This purchase included the tooling that was in defendant's possession. Within two weeks of purchasing Ingersoll's assets, plaintiff contacted defendant about purchasing tractor parts, and in early May 2005, requested a quote for the production of parts required for the "4000 Series" tractor.

Negotiations between plaintiff and defendant over price quotes for tractor parts continued into 2006. In March 2006, defendant told plaintiff that the tooling for certain tractor parts no longer existed. Upon further inquiry, defendant admitted that in February 2006 it had scrapped all but one of plaintiff's dies without permission. Plaintiff does not have the blueprints of the tooling that was scrapped but has the blueprints of the finished tractor parts, and therefore, reverse engineering will be required to create new tooling blueprints. Currently, plaintiff continues to manufacture tractors but is running low on certain tractor parts that had been made using the scrapped tooling.

OPINION

4

A. Choice of Law

An initial question raised by plaintiff's state law claim is which state's law applies. Plaintiff assumed in its brief that Wisconsin law applies and defendant does not challenge that assumption. I will follow the parties' lead and assume WI law applies as well. FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 283 (7th Cir. 2002) (in absence of any discussion of choice of law issues by parties, court applies law of forum state).

B. Conversion

Under Wisconsin law, the tort of "[c]onversion is often defined as the wrongful exercise of dominion or control over a chattel[, and] [c]onversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained." Production Credit Assosication v. Nowatzski, 90 Wis. 2d 344, 354, 280 N.W.2d 118, 123 (1979) (citations omitted); see also H.A. Friend & Co. v. Professional Stationery, Inc., 2006 WI App 141, ¶11, 294 Wis. 2d 754, 720 N.W.2d 96 (listing three elements for conversion: "(1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property"). Defendant admits that originally it was lawfully in control of plaintiff's tooling and that it wrongfully scrapped plaintiff's tooling without plaintiff's consent. Therefore, I will grant plaintiff's motion for summary judgment concerning its claim that defendant is

5

liable for conversion.

### C. Damages

The underlying purpose of conversion damages is to reasonably compensate the wronged party for the loss sustained. Nowatzski, 90 Wis. 2d at 355, 280 N.W.2d at 123-24. In general, when a defendant initially possesses a plaintiff's property rightfully but later is unable to return the property on demand, Wisconsin law has set damages at "the value of the property on the date when the property should have been returned to plaintiff with interest to the time of trial." Wis. JI-Civil 2201 (1991); Ingram v. Rankin, 47 Wis. 406, 420, 2 N.W. 755, 766 (1879); Topzant v. Koshe, 242 Wis. 585, 588, 9 N.W.2d 136, 137-38 (1943). Moreover, if "the plaintiff is deprived of some special use of the property anticipated by the wrongdoer," the plaintiff is entitled to additional damages. Ingram, 47 Wis. at 420, 2 N.W. at 766. To obtain additional damages, the converter must have been aware that the plaintiff would be deprived of "some particular use of his property" and the conversion must have "directly prevented" that use. Id. at 419, 2 N.W. at 765; Wis. JI-Civil 2201 ("Recovery of this additional damage requires a showing that the special use would have resulted in the plaintiff realizing some benefit from the property had it not been converted").

As the party moving for summary judgment and the party bearing the ultimate

burden of proof, plaintiff must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  Goldstein v. Fidelity & Guaranty Ins. Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing damages, the value of the converted tooling just before destruction is the key fact to be determined.  The parties dispute that value.  Both parties have provided their own evidence and their own method for determining the value of the converted tooling.  Plaintiff's attempt at valuation focuses on what value the tooling had for plaintiff as the owner.  It places that owner value at the cost to replace the tooling with new top of the line tooling.  Defendant approaches valuation from the point of view that the court should find the value of the tooling equal to the amount for which the tooling could have been sold at the time it was destroyed.  Wisconsin law does not fully support either party's method of determining the value of the tooling.

Before discussing the Wisconsin law regarding valuation, it is necessary to point out that the value of the tooling just before destruction is somewhat nebulous because the uniqueness of plaintiff's tooling leaves it with no readily ascertainable market value.  The tooling was custom tooling used to produce specific parts for plaintiff's tractors.  Its only value was to plaintiff.  Thus, guidance on determining the value of the tooling comes from Wisconsin law concerning the value of nonmarketable property.

The Wisconsin Supreme Court has reasoned that the value of nonmarketable

7

property such as the tooling is the "value to the owner." Town of Fifield v. State Farm Mutual Automoblie Ins. Co., 119 Wis. 2d 220, 349 N.W.2d 684, 688 (1984). There are many factors to consider in determining value to the owner and "market value is just one way to measure such damages." Id. Some of the other factors to consider in ascertaining "value to the owner" are original cost less depreciation; the replacement cost less depreciation; the age of the property; the property's use and utility; the property's condition; and continued usefulness of the property. Id. (citations omitted). Therefore, using the factors provided under Wisconsin law, plaintiff faces the difficult task of proving that there is no genuine issue concerning the value of the converted tooling.

Despite plaintiff's argument to the contrary, there are disputed material facts concerning the value of the converted tooling. For example, the parties dispute the tooling's use, utility, condition and continued usefulness at the time it was destroyed. Plaintiff has provided evidence that since 2003, when defendant started producing tractor parts for Ingersoll, there had been no complaints regarding the quality of the parts made from the tooling and that the prices defendant quoted concerning tractor parts represented tooling in good working condition. Defendant has provided its own evidence to argue that the tooling was past its useful life when defendant obtained it and that the tooling was in such bad condition that defendant had to use other methods to produce certain tractor parts.

Moreover, the parties dispute the replacement cost of the tooling. Both parties have

8

provided opinions on how much it would cost to replace the tooling defendant scrapped. The replacement costs provided by each party are at opposite ends of the spectrum, that is, the cost ranges from under $100,000 to more than $500,000. The parties' differences on costs stem from their dispute over the type of tooling defendant scrapped. Plaintiff argues that the tooling was production tooling, which is higher quality tooling. Defendant argues that the tooling was prototype tooling, which is generally lesser quality tooling. These factual disputes concerning the value of the tooling should be resolved by a jury, not by the court. A district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The factual disputes between the parties are genuine and material because they concern the value of the tooling, which is the fact issue at the core of determining damages. Because of these factual disputes, the issue of damages for which defendant is liable regarding its conversion of plaintiff's tooling remains an issue for a jury to decide. Accordingly, plaintiff's motion for summary judgment on damages will be denied.

## ORDER

IT IS ORDERED that plaintiff Eastman Industries' motion for summary judgment on its claim for conversion (dkt. #8) is GRANTED in part with respect to the issue of

9

defendant Norlen Incorporated's liability for converting plaintiff's tooling and DENIED in part with respect to the issue of the damages to which plaintiff is entitled.

Entered this 5th day of March, 2008.

                        BY THE COURT:

                        /s/

                        _____
                        BARBARA B. CRABB
                        District Judge